Statement of the Case.
MONROE, C. J.
Plaintiff was employed by defendant to operate an elevator, at the agreed compensation of $35 per month, and, about ten days later, whilst she was engaged in the discharge of that function, the elevator, by reason of some defect, dropped to the ground floor and then suddenly ascended, and, in its ascent, caught plaintiff’s feet between it and the wall of the shaft, and so injured them that it became necessary to amputate the right foot below the ankle, “leaving nothing” (according to the surgeon called .by plaintiff) “but the flap of the heel,” the “astragalus” being “gone,” and (according to the same authority) necessary to amputate the great toe of the left foot. Being asked whether he found “any other condition existing,” the witness answered, “That is all; an amputation of the right foot and left toe— and a crushed left toe.” Being asked as to “shock,” he replied (over objection) that “she suffered considerable shock from the accident,” and would probably suffer from that for about 8 or 12 months. According to the surgeon called by defendant, “all the bones of the right foot were included in the amputation,” with the exception of the os calcis and the astragalus,” and 1 y2 joints of the great toe of the left foot were removed. The wounds, on both feet, were healed when the witnesses gave their testimony. Defendant’s surgeon described the injuries to the feet as “permanent, total, in right foot, and permanent, partial, in left.” They (the two surgeons) agreed that the nerve, or shock, condition was not permanent. No other disabling injury to the left foot is shown than that to the great toe.
Plaintiff claims $3,500, being $8.75 per week for 400 weeks, alleging that she should be allowed that amount under the Burke-Roberts Employers’ Liability Act (No. 20 of 1914), as amended by Acts 243 of 1916 and 38 of 1918, and because of the high cost of living at this time. Defendant filed an exception of no cause or right of action, vagueness, and insufficiency of allegation, which having been referred to the merits, it answered, admitting the injuries to plaintiff’s feet, but denying that plaintiff would be entitled to receive more than $4.44 per week (for the number of weeks to be determined by the court) therefor. The trial court gave judgment for plaintiff for “$4.34 per week throughout a period of 145 weeks,” beginning on October 14, 1918. And it is admitted (in the brief herein filed on behalf of plaintiff) that—
“This amount” (referring to the amount thus awarded) “having been refused, and the trial court failing to recognize that plaintiff had suffered total and permanent injuries, plaintiff appeals.”
Opinion.
Counsel for defendant urges his exception (which, the trial judge, having referred to *621 the merits, thereafter impliedly overruled); but defendant, having neither appealed nor answered the appeal taken by plaintiff, can obtain no amendment of the judgment appealed from. The trial judge could not have failed to recognize the permanent character of the injuries sustained by plaintiff, but, evidently, based his judgment on certain specific provisions of section 8 of Act 38 of 1918, allowing 55 per centum of wages, for 125 weeks,* for loss of one foot, and same per centum, for 20 weeks, for loss of a great toe.
A careful consideration of the statute thus referred to has led to a change in the view entertained by some of the members of this court (and, perhaps, expressed by the writer of this opinion), at the time of the oral argument, and to the conclusion that our learned Brother of the district court has failed to take into consideration certain other provisions of the statute in question which should be applied in the ease here presented.
Counsel for plaintiff says (in his brief):
“Plaintiff believes that her injuries fall within Act 38 of 1918, § 8, cl. (b), p. 53, which, * * * after enumerating for the loss of both hands, or both feet, or both eyes, or one hand and one foot, further provides: Or for any injury producing permanent total disability to do work of any reasonable character, fifty-five per cen-tum of wages during the period of disability, not however, beyond four hundred weeks.”
Section 8, in so far as it seems pertinent (or is invoked), reads:
“That, for injury producing disability, compensation shall be paid under this act to an injured employé in accordance with the following schedule of payments:
“ (a) For injury. producing temporary disability to do any work of any reasonable character, fifty-five per centum of wages during the period of disability, not, however, beyond 300 weeks.
“(b) For the loss of both hands, or both feet, or both eyes, or one hand and one foot, or any injury producing permanent total disability to do work of any reasonable character, fifty-five per centum of wages during the period of disability, not however, beyond 400 weeks.
“(c) For injury producing partial disability to do work of any reasonable character, fifty-five per centum of difference between wages at the time of the injury and wages which the injured employé is able to earn thereafter, during the period of disability, not, however, beyond 300 weeks.
“ (d) In the following cases, the compensation shall be as follows”: For the loss of a thumb, fifty-five per centum of wages during 50 weeks. For the loss of a first finger * * * fifty-five per centum of wages during 30 weeks. For the loss of any other finger, or a great toe, fifty-five per centum of wages during 20 weeks.
* # * * # *
“For the loss of a foot, fifty-five per centum of wages during 125 weeks.
“For the loss of an eye 55 per centum of wages during 100 weeks.
“The loss of more than one phalanx of a thumb or more than two phalanges of any finger or toe shall be considered as the loss of the entire member; provided, however, that in no case shall- the amount received for more than one finger exceed the amount provided in the schedule for the loss of a hand, or the amount received for the loss of more than one toe exceed the amount provided in this schedule for the loss of a foot.
* * * * *
“(e) In cases not falling within any of the provisions already made, where the employé is seriously permanently disfigured about the face or head, or where the usefulness of a member * * * is seriously permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation here-inabove specifically provided in the eases of specific disabilities above named, not to exceed 55 per centum of wages during 100 weeks.”
It will be observed, that, whilst the lawmaker felt able to foresee, and thought it advisable to make specific provisions for compensation for, the disability resulting from particular injuries, such as the loss of eyes, fingers, thumbs, hands, arms, legs, feet, and toes, he realized that the compensation that should be allowed in the ease of loss of two members as the eyes, is not to be determined by merely doubling that allowed for one such member, since the loss of one eye calls for compensation during 100 weeks, and the loss *623 of both eyes for compensation for the maximum of 400 weeks; the loss of one foot for compensation during 125 weeks, and of both feet for the maximum of 400 weeks, etc. It would appear, also, that he realized that it would be impossible to foresee and make specific provision for all cases in which the employe, receiving several injuries, varying in character, the effects would be cumulative, since, in clause (b), after providing for the loss of both hands, both feet, both eyes, and one loot and one hand, he adds (to those cases deserving the maximum compensation), “or any injury producing permanent total disability to do work of any reasonable character.” And, in clause (e), he declares that—
“In cases not falling within any of the provisions already made, where the employs is seriously permanently disfigured, about the face or head, or where the usefulness of a member * * * is seriously permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation here-inabove specifically provided in the cases of specific disabilities above named, not to exceed 55 per centum of wages during 100 weeks.”
In the instant case, it is quite clear that plaintiff, in having one foot so crushed as to require amputation and the other so crushed as to require the amputation of the gre'at toe and to leave upon the sole of the foot a scar about 2% inches in length, and, by reason of the accident, having received a shock to her nervous system from the effects of which she suffered for from 8 to 12 months, was temporarily totally disabled.
It is equally clear that, while that disability did not last for 300 weeks, the statute makes no provision for the cumulative effects of plaintiff’s different injuries, but that, when to the injury to her right foot, resulting in its total 'loss, there is added the injury to her left foot whereby its usefulness is seriously, permanently impaired, particularly in view of the fact that she has now only the left foot to stand and bear the greater weight on, loss of the great toe from that foot is much more serious than if it were the only injury that she sustained.
We therefore conclude that the judgment appealed from should be amended by increasing the award therein made to $4.44 per week (being 55 per centum of plaintiff’s weekly wage, of $8.07»/i3 per week) for 225 weeks (being 125 weeks for loss of right foot, under clause (d), and 100 weeks for loss of great toe on left foot, under clause (e), of section 8 of Act 38 of 1918); and it is so ordered, defendant to pay all costs.