701 S.E.2d 730

**Allie JAMES, Claimant, Appellant,**

**v.**

**ANNE'S INC., Employer, and Villanova Insurance Company, in liquidation through the South Carolina Property & Casualty Insurance Guaranty Association, Carrier, Respondents.**

**No. 26762.**

Supreme Court of South Carolina.

Re–Heard June 24, 2010.

Re–Filed Oct. 25, 2010.

Rehearing Denied Dec. 1, 2010.

Jody Vann McKnight, of the Reisen Law Firm, of Charleston, for Appellant.

Mark D. Cauthen, T. Jeff Goodwyn, Jr., and Peter P. Leventis, IV, all of McKay, Cauthen, Settana & Stubley, of Columbia, for Respondents.

Andrew Nathan Safran, of Columbia, Ronald J. Jebaily and Suzanne H. Jebaily, both of the Jebaily Law Firm, of Florence, and Stephen B. Samuels, of Columbia, all for Amicus Curiae South Carolina Injured Workers' Advocates; William Hughes Nicholson, III, of Nicholson & Anderson, of Greenwood, for Amicus Curiae South Carolina Association for Justice; Susan Berkowitz and Stephen Suggs, both of the South Carolina Appleseed Legal Justice Center, of Columbia, for Amicus Curiae South Carolina Appleseed Legal Justice Center; and John S. Nichols and Blake A. Hewitt, both of Bluestein, Nichols & Thompson, of Columbia, for the three foregoing Amici; and Samuel F. Painter, of Nexsen Pruet, of Columbia, for Amicus Curiae South Carolina Self–Insurers Association, Inc.

Justice BEATTY.

The South Carolina Workers' Compensation Commission found Allie James ("James") was totally and permanently disabled from a work accident and that she was entitled to a lump sum award of benefits. The Commission denied James's request to include language in the order prorating the lump sum award over her life expectancy after her employer and its carrier ("Respondents") objected. The circuit court affirmed. James appealed, arguing the Commission has the authority to include language in the order prorating the lump sum award over her life expectancy and should have done so. We affirmed the circuit court in *James v. Anne's Inc.*, 386 S.C. 326, 688 S.E.2d 562 (2010). Subsequently, we granted James's petition for rehearing.[1] We now withdraw that opinion and substitute the current opinion reversing the circuit court's order and remanding the matter in accordance with this decision.

---

1. Three organizations, the South Carolina Association for Justice, the South Carolina Injured Workers' Advocates, and the South Carolina Appleseed Legal Justice Center, filed a joint Brief of Amici Curiae in support of the petition for rehearing, and we granted their motion to participate in oral argument. An Amicus Brief opposing the petition was filed by the South Carolina Self–Insurers Association, Inc.

## I. FACTS

On May 10, 2002, James sustained injuries to her back, neck, and head when she slipped and fell down some stairs while working at Anne's Dress Shop in Charleston County. James worked for this employer for approximately twenty years before being terminated in 2003.

James sought workers' compensation benefits for her injuries. In 2005, the hearing commissioner found James was totally and permanently disabled as a result of the accident and that she was entitled to 500 weeks of compensation benefits, with a credit allowed for the weeks of compensation already paid. The hearing commissioner further found it was appropriate for the award to be made in a lump sum.

The hearing commissioner denied James's request to include language in the order prorating the lump sum award over her life expectancy using the life expectancy table provided by section 19–1–150 of the South Carolina Code [2] after Respondents objected. The hearing commissioner concluded she did not have the authority to include proration language in the order in the absence of consent from Respondents.

James sought review from the full Commission. In a two-to-one decision, the Commission upheld the hearing commissioner. The dissenting commissioner found the Commission does have the authority to include proration language in an order, but that there was no error in failing to include such language in the current case.

James appealed to the circuit court, which affirmed the Commission in a form order. James moved for reconsideration, which the circuit court denied in a formal order filed November 15, 2006.

James appealed to this Court, which affirmed in a split decision. *James v. Anne's Inc.*, 386 S.C. 326, 688 S.E.2d 562 (2010). The majority held that, without an express grant of authority from the South Carolina General Assembly, the

---

**2.** *See* S.C.Code Ann. § 19–1–150 (Supp.2009) (stating this table must be used to establish the life expectancy of a person in a civil action or other litigation and must be received by all courts and all persons having the power to determine evidence, along with other evidence as to the person's health, constitution, and habits).

Commission did not have the authority to include language prorating a lump sum award over a claimant's life expectancy without the consent of all parties. The dissent found that authority to include proration language existed by virtue of the statute conferring a general grant of authority to the Commission to decide all questions arising under the act, citing S.C.Code Ann. § 42–3–180 (1985).

## II. LAW/ANALYSIS

James asserts the circuit court erred in holding the Commission lacks the authority to include language in workers' compensation orders prorating a lump sum award over a claimant's life expectancy in the absence of consent from all parties, and in refusing to include such language in her case. We agree.

### (A) Standard of Review

■ An appellate court has the power upon review to reverse or modify a decision of an administrative agency if the findings and conclusions of the agency are (1) affected by an error of law, (2) clearly erroneous in view of the reliable and substantial evidence on the whole record, or (3) arbitrary or capricious or characterized by abuse of discretion or a clearly unwarranted exercise of discretion. *Gray v. Club Group, Ltd.*, 339 S.C. 173, 182, 528 S.E.2d 435, 440 (Ct.App.2000).

### (B) Justiciability

■ As an initial matter, we note the three amici participating in the oral argument of this case have filed a joint brief regarding the merits of the appeal and asserting as a threshold issue that this matter is not justiciable. The amici specifically assert Respondents lack standing because they cannot show any injury from allocating the lump sum award as it is merely a mathematical calculation that will have no effect on their liability for compensation. We conclude the amici's allegation regarding justiciability, and more particularly standing, is not properly before the Court in the current procedural posture.

■ "Before any action can be maintained, there must exist a justiciable controversy." *Byrd v. Irmo High Sch.*, 321

S.C. 426, 430, 468 S.E.2d 861, 864 (1996). "A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute." *Pee Dee Elec. Coop. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983). Justiciability encompasses several doctrines, including ripeness, mootness, and standing. *Jackson v. State*, 331 S.C. 486, 489 S.E.2d 915 (1997).

Rule 213 of the South Carolina Appellate Court Rules, governing Amicus Curiae Briefs, states an amicus brief is limited to the issues raised by the parties: "The brief shall be limited to argument of the issues on appeal as presented by the parties and shall comply with the requirements of Rules 208(b) and 211." Rule 213, SCACR.

Although James did argue that proration would not have any effect upon Respondents because it would not change the actual amount of the monetary award, it was in the context of responding to Respondents' argument that proration over a claimant's lifetime was not authorized because our workers' compensation statutes limit a claimant to a maximum of 500 weeks of compensation in most instances. Thus, justiciability and standing were not raised by the parties.

This Court has the inherent authority to consider justiciability. However, when a party belatedly attempts to raise the issue of standing, our courts have applied error preservation principles and held that the matter was not preserved for review where the trial court was not given an opportunity to first rule on the issue.[3]

In the current appeal, it is not a party, but the amici who are attempting to belatedly raise standing, but we find they

---

3. *See generally Kolle v. State*, 386 S.C. 578, 690 S.E.2d 73 (2010) (finding the State's argument regarding standing was not preserved where it was not raised at the PCR hearing, but was raised in a motion for reconsideration); *Michael P. v. Greenville County Dep't of Soc. Servs.*, 385 S.C. 407, 413 n. 4, 684 S.E.2d 211, 214 n. 4 (Ct.App.2009) (noting some of the appellants' arguments in support of standing were not preserved for consideration on appeal because they were not raised to and ruled upon by the family court); *A Fast Photo Express, Inc. v. First Nat'l Bank of Chicago*, 369 S.C. 80, 630 S.E.2d 285 (Ct.App.2006) (discussing whether the issue of standing was properly preserved for appeal and concluding the issue was preserved because it was both raised to and ruled upon by the master-in-equity).

are similarly precluded from asserting the issue on error preservation grounds because the amici can argue only the issues that were raised by the parties. See Rule 213, SCACR.

## (C) Social Security Offset

In this case, James sought a proration of her lump sum award using the life expectancy table found at S.C.Code Ann. § 19–1–150. As noted by the circuit court, James's "concern is that her Social Security Disability benefits will be offset by the workers' compensation benefits she receives. [James] argues that the proration language is required to maximize her workers' compensation award...."

Under federal law, when a person is deemed disabled and is entitled to monthly disability payments under the Social Security Act, the disability payments must be reduced when the combined amount of the person's monthly Social Security disability payments and any monthly workers' compensation benefits exceeds eighty percent of the person's pre-disability earnings. See 42 U.S.C.A. § 424a(a) (2003) (providing for the reduction of disability benefits). When the workers' compensation benefits are "payable on other than a monthly basis (excluding a benefit payable as a lump sum *except to the extent that it is a commutation of, or a substitute for, periodic payments*), the reduction under this section shall be made ... in such amounts as the Commissioner of Social Security finds will *approximate as nearly as practicable* the reduction prescribed by subsection (a) of this section." *Id.* § 424a(b) (emphasis added). Thus, lump sum awards generally necessitate a reduction in Social Security disability benefits in instances where they result from a commutation of periodic payments.

The Social Security Administration does not apply a reduction or an offset, however, where a state has enacted a reduction of their workers' compensation benefits in these circumstances by February 18, 1981. This reduction (by the individual states) is known as a "reverse-offset" provision. Tommy W. Rogers & Willie L. Rose, *Workers' Compensation and Public Disability Benefits Offset from Social Security Disability Benefits,* 29 S.U. L.Rev. 57, 60 (2001).

South Carolina did not legislatively enact a reverse-offset provision. Grady L. Beard et al., *The Law of Workers' Compensation Insurance in South Carolina,* 567 (5th ed.2008); *see also* 70B Am.Jur.2d *Social Security and Medicare* § 1490 (2000) (listing states that the Social Security Administration has recognized as having met the legal criteria for reverse-offset plans; South Carolina is not included in this list).

In order to minimize the reduction of her Social Security benefits, James seeks to prorate her lump sum, workers' compensation award for a permanent disability over her lifetime using the life expectancy table set forth in section 19–1–150. James asserts the Social Security Administration expressly accepts the monthly amount derived from using a life expectancy table as one of the bases for calculating the offset to be made to Social Security benefits.

The Social Security Administration will use the prorated time frame stated in an order awarding a lump sum benefit if a time frame is provided; otherwise, it will use an alternative basis for this computation:

> According to SSA policy, a lump sum award of workers' compensation benefits . . . will be prorated at an established weekly rate. The priority for establishing a weekly rate of payment is as follows:
>
> (1) the rate specified in the lump sum award, including a rate based on life expectancy;
>
> (2) the periodic rate paid prior to the lump sum award if no rate was specified in the lump sum award; or
>
> (3) the state workers' compensation maximum rate in effect on the date of injury, which is the periodic rate that, in almost every case, would have been payable had periodic payments been made instead of a lump sum, if a workers' compensation claim is involved and if no rate was specified in the lump sum award and no prior periodic payments had been made.

2A Soc. Sec. Law & Prac. § 26:72 (2006) (footnotes omitted); *see also Harden v. United States Dep't of Health & Human Servs.,* 979 F.2d 1082, 1084 (5th Cir.1992) (noting the Social Security Program Operations Manual specifically sets forth this method for prorating lump sum awards).

### (D) Authority of the Commission

In the current appeal, the circuit court concluded that it was "constrained to agree with the decision of the Commission that no authority exists in our Workers' Compensation laws for allocation of a lump sum award over the claimant's life expectancy in the absence of consent of the parties."

### (1) *Utica–Mohawk Mills v. Orr*

James initially cited *Utica–Mohawk Mills v. Orr*, 227 S.C. 226, 87 S.E.2d 589 (1955), in addition to the general authority of the Commission under statutory law, for support of the Commission's use of proration language. Although *Utica–Mohawk Mills* is often cited in the Commission's orders along with statutory law when prorating lump sum awards, the circuit court concluded *Utica–Mohawk Mills* is not applicable here because that case involves "construing a permanent partial disability award of the Commission." The circuit court stated this case essentially stands for the proposition that, "in the absence of the consent of the parties" the Commission and the Courts are without authority to "increase the amount of the weekly installments above the sum [allowed by law] or [to] reduce the length of the statutory period."

*Utica–Mohawk Mills* interpreted a statute concerning partial disability and held that the weekly compensation (not to exceed 300 weeks) for a claimant who sustained a thirty percent permanent disability should be calculated by taking a percentage of the difference between the average weekly wages he was earning before the injury and the average weekly wages that the employee was able to earn after the injury. *Id.* at 230, 87 S.E.2d at 591.

As the parties concede on appeal, although the Commission, the Social Security Administration, and the courts have referred to the *Utica–Mohawk Mills* case in this context, it does not actually address the lifetime proration issue presently before us. Further, reliance on this case is misplaced because *Utica–Mohawk Mills* was issued in 1955, but the first offset provision in the Social Security Act was not added until 1956, which "conclusively shows that *Utica–Mohawk*'s authority for a reduction in workers' compensation benefits before social security disability insurance benefits are reduced is unfound-

ed." Grady L. Beard et al., *The Law of Workers' Compensation Insurance in South Carolina,* 568 (5th ed.2008). "Nonetheless, due to its history of accepting the priority of workers' compensation reductions under South Carolina law, the Social Security Administration accepts this case as authority that workers' compensation benefits can be reduced to maximize a claimant's entitlement to Social Security disability insurance benefits." *Id.*

For the reasons noted above, we agree with the circuit court that the *Utica–Mohawk Mills* case has no application here. However, we turn now to consideration of the Commission's authority under statutory law.

## (2) Statutory Authority

■ Section 42–3–180 of the South Carolina Code confers a general grant of authority on the Commission to decide all questions arising under the Workers' Compensation Act: *"All questions* arising under this Title, if not settled by agreement of the parties interested therein with the approval of the Commission, *shall be determined by the Commission,* except as otherwise provided in this Title." S.C.Code Ann. § 42–3–180 (1985) (emphasis added).

The circuit court found section 42–3–180 did not specifically address the Commission's authority to allocate lump sum awards over the employee's life expectancy. The circuit court further found that, because "workers' compensation statutes provide an exclusive compensatory system in derogation of common law rights, we must strictly construe such statutes, leaving it to the legislature to amend and define any ambiguities," citing *Cox v. BellSouth Telecommunications,* 356 S.C. 468, 472, 589 S.E.2d 766, 768 (Ct.App.2003).

In *Cox,* the Court of Appeals held that the workers' compensation statute prohibiting total lump sum awards in lifetime benefits cases should be strictly construed and not expanded to prohibit *partial* lump sum awards in lifetime benefits cases. The court stated, as a matter of first impression, that the Commission erred as a matter of law in ruling that it was not empowered to award a partial lump sum. *Id.* at 473, 589 S.E.2d at 769. The court explained that "[p]ermitting partial lump sum payments provides the

[C]ommission needed flexibility in lifetime benefits cases, *flexibility it regularly exercises with respect to all other compensation awards,* to ensure the best interests of the injured worker are protected." *Id.* at 472–73, 589 S.E.2d at 768–69 (emphasis added).

*Cox* involved the strict construction of a statute *prohibiting* certain awards. In contrast, there is nothing in the Act that prohibits, either expressly or impliedly, the proration language at issue here. *Cf. Geathers v. 3V, Inc.,* 371 S.C. 570, 641 S.E.2d 29 (2007) (finding where South Carolina had not adopted the last injurious exposure rule, but there was both statutory and case law that favored adoption of this rule rather than an apportionment rule, South Carolina would adopt the last injurious exposure rule; thus, the Commission erred in using the apportionment rule to apportion liability between two carriers when an employee is injured after working for successive employers).

■ *Cox* confirms that the Commission regularly exercises its flexibility in making compensation awards to ensure the best interests of the workers are protected to the extent the award is not otherwise prohibited by the Workers' Compensation Act. This is consistent with the general rule that workers' compensation law is to be liberally construed in favor of coverage in order to serve the beneficent purpose of the Act; only exceptions and restrictions on coverage are to be strictly construed. *See Peay v. U.S. Silica Co.,* 313 S.C. 91, 94, 437 S.E.2d 64, 65 (1993) ("[W]orkers' compensation statutes are construed liberally in favor of coverage. It follows that any exception to workers' compensation coverage must be narrowly construed." (internal citation omitted)); *Cross v. Concrete Materials,* 236 S.C. 440, 114 S.E.2d 828 (1960) (stating workers' compensation law will be construed liberally to effect its beneficent purpose); *Olmstead v. Shakespeare,* 348 S.C. 436, 559 S.E.2d 370 (Ct.App.2002) (noting the law is liberally construed to apply coverage, while exceptions are strictly construed). Therefore, Cox does not require the strict construction of the Act's provisions in this case.

Respondents argue the proration provision is typically part of a negotiated settlement, whereby the employee agrees to give up certain benefits to which they are entitled in exchange for inclusion of this proration language. We find Respon-

dents' admitted desire to use proration language as a "bargaining chip" in these circumstances is inappropriate. This is particularly true since the South Carolina legislature did not choose to enact a reverse-offset provision. Moreover, if, as Respondents argue, the Commission has not been authorized by the General Assembly to include proration language, then the Commission would not have the authority to include such language in cases where the employers and carriers give their "permission," as the Commission's authority is defined by law, not by consent.

Respondents further argue that, because the maximum period for benefits is generally 500 weeks, this is the maximum period that can be used for proration. *See* S.C.Code Ann. § 42–9–10(A) (Supp.2009) ("In no case may the period covered by the compensation exceed five hundred weeks except as provided in subsection (C)."); *id.* § 42–9–10(C) (stating "any person determined to be totally and permanently disabled who as a result of a compensable injury is a paraplegic, a quadriplegic, or who has suffered physical brain damage is not subject to the five-hundred-week limitation and shall receive the benefits for life").

The 500 weeks limitation, however, represents the limit of the *monetary* amount of compensation that may be recovered. It has no relation to the duration or the extent of the injury. A permanent impairment, by definition, lasts for a lifetime. Thus, the proration of compensation over the claimant's lifetime is a reasonable method of accounting for this compensation. Proration of the lump sum award does not affect the *amount* of the award in any manner. Rather, it affects only the allocation of the award; it is purely an accounting mechanism specifically approved of by the Social Security Administration in determining the amount of a Social Security offset. The amount of the award is still limited to the value of 500 weeks of compensation and it has absolutely no effect on the liability of Respondents.

There is no reason for Respondents to object to this proration, except as a means of giving them the power to either positively or negatively impact a claimant's receipt of Social Security disability benefits based on whether they confer or withhold their consent to proration language. This kind of arbitrary outcome is not in accord with the purpose of our

Workers' Compensation Act. *See Case v. Hermitage Cotton Mills*, 236 S.C. 515, 115 S.E.2d 57 (1960) (observing the courts of this country have universally viewed workers' compensation law as being enacted for the benefit of employees and that the law is to be liberally construed for the employees' protection; further, one of the primary purposes of the Act is to help prevent employees from becoming charges upon society for support).

We do not believe that simply prorating benefits for the maximum period of weekly benefits available under state law is a rational solution to the problem of how to account for workers' compensation benefits. Such a method assumes the award is intended as compensation only for that period of time, when in reality the award is intended as compensation for a lasting disability. A permanent disability does not end after 500 weeks, and it thwarts the authority of the Commission to prohibit it from apportioning the award in the manner it deems appropriate. *See* 70B Am.Jur.2d *Social Security and Medicare* § 1501 (2000) (observing proration for the maximum period of benefits under state law is inconsistent with the purpose of the Social Security Act as it improperly assumes the state lump sum workers' compensation award represents the maximum benefit over the shortest period of time, thus guaranteeing application of the Social Security offset); *see also* 1 Harvey L. McCormick, *Social Security Claims and Procedures* § 8:32 (5th ed.1998) (noting at least one federal Circuit Court of Appeals has held that the Social Security Administration was required to prorate a lump-sum award or settlement over the remainder of an individual's working life (citing *Hodge v. Shalala*, 27 F.3d 430 (9th Cir.1994))).

The purpose of allocating a lump sum disability award over the claimant's lifetime is to make sure a claimant is not being economically penalized by the Social Security Administration's calculation of an offset. The Social Security Administration expressly recognizes and accepts such allocations as a matter of routine practice. *See* 2A Soc. Sec. Law & Prac. § 26:72 (2006) (noting a state's proration based on life expectancy in the workers' compensation order is the Social Security Administration's first choice to use when calculating any offset).

Section 42–3–180 of the South Carolina Code confers a general grant of authority on the Commission to address all

issues arising under the Workers' Compensation Act that are not otherwise provided for under South Carolina law. S.C.Code Ann. § 42–3–180 (1985). Further, section 42–9–301 authorizes the Commission to establish and award lump sum payments. *Id.* § 42–9–301.

The Commission is empowered to interpret its provisions and to issue regulations governing the administration of awards. *See id.* § 42–3–30 ("The Commission shall promulgate all regulations relating to the administration of the workers' compensation laws of this State necessary to implement the provisions of this title and consistent therewith."); *see also* 100 C.J.S. *Workers' Compensation* § 718 (2000) ("Workers' compensation boards or commissions are generally empowered to make and enforce rules and regulations to enable the board or commission to carry out ... its duties, and such rules and regulations have the force and effect of law if reasonable and not inconsistent with pertinent statutory provisions.").

We hold the Commission has the authority to prorate a lump sum award over a claimant's expected lifetime pursuant to its general authority under section 42–3–180 to address all issues arising under the Act and its statutory authority to fix lump sum awards. It is undisputed that the Commission is responsible for making factual findings and addressing matters pertinent to the questions and issues before it. S.C.Code Ann. § 42–17–40(A) (Supp.2009); S.C.Code Ann. Regs. 67–709 (1990 & Supp.2009). Using the life expectancy table provided by South Carolina law to prorate a lump sum award given for a life-long disability is simply a mathematical calculation and, as such, a statement regarding this amount is a factual finding that is within the Commission's purview. This proration is specifically accepted under the procedures established for administering Social Security benefits and it does not affect the amount of, or the liability for, the workers' compensation award in any way.

"A state workers' compensation commission or board is, in the first instance, responsible for effectuating the purposes of the workers' compensation act by administering, enforcing, and construing its provisions in order to secure its humane objectives." 100 C.J.S. *Workers' Compensation* § 706 (2000).

"Such commission, board, or bureau is vested with the authority to formulate policies and standards for administering the workers' compensation act." *Id.*

The Commission has a long-standing practice of including proration language in the orders it issues. Despite the result reached in the current case, the Commission has since expressly concluded in subsequent cases that it has the authority to prorate lump sum awards in order to serve the purposes of the Workers' Compensation Act, and it has done so over the objection of the employer and its carrier.[4] We find Respondents' contention that use of the proration language cannot be used without its consent is untenable and is not a proper interpretation of our Workers' Compensation Act.

In our view, the Commission's proration of lump sum awards over an employee's life expectancy is clearly within the purview of the Commission's authority and serves to further the Act's humane objectives. This is particularly true in light of the fact that the Social Security Administration itself specifically provides for and accepts such proration language from state workers' compensation commissions all over the country when calculating the applicable offset. To deny proration in these circumstances to the employees of our state would be inconsistent with the recognized purpose of our Workers' Compensation Act.

### III. CONCLUSION

Based on the foregoing, we hold the Commission has the authority to prorate a lump sum award over a claimant's life expectancy using the life expectancy table provided by South Carolina law. Consequently, we return this case to the circuit court for it to remand it forthwith to the Commission so it can rule on James's proration request.

**REVERSED AND REMANDED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.

---

4. *See Pressley v. REA Constr. Co.,* 374 S.C. 283, 288, 648 S.E.2d 301, 303 (Ct.App.2007) (stating "ordinarily, the construction of a statute by an agency charged with its administration will be accorded the most respectful deference and will not be overruled absent compelling reasons").